```
                  UNITED STATES DISTRICT COURT

                   DISTRICT OF NEW HAMPSHIRE
```

Richard Bourdeau, Jr.,
     Claimant

     v.                              Case No. 20-cv-793-SM
                                     Opinion No. 2021 DNH 095

Andrew Saul, Commissioner,
Social Security Administration,
     Defendant

## O R D E R

Pursuant to 42 U.S.C. § 405(g), claimant, Richard Bourdeau, Jr., moves to reverse or vacate the Commissioner's decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act. See 42 U.S.C. § 423, et seq. The Commissioner objects and moves for an order affirming his decision.

For the reasons discussed, claimant's motion is denied, and the Commissioner's motion is granted.

### Background

I.   Procedural History.

In April of 2018, claimant filed an application for Disability Insurance Benefits ("DIB"), alleging that he was

disabled and had been unable to work since January 29, 2018. Claimant was 50 years old at the time and had acquired sufficient quarters of coverage to remain insured through December of 2022. Claimant's application was denied and he requested a hearing before an Administrative Law Judge ("ALJ").

In September of 2019, claimant, his attorney, and an impartial vocational expert appeared before an ALJ, who considered claimant's applications de novo. The following month, the ALJ issued his written decision concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision. Claimant then requested review by the Appeals Council. That request was denied. Accordingly, the ALJ's denial of claimant's application for benefits became the final decision of the Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 10). In response, the Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 12). Those motions are pending.

2

II. Factual Background.

A detailed factual background can be found in claimant's statement of material facts (document no. 11) and the Commissioner's statement of material facts (document no. 13). Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Importantly, then, it is something less than a preponderance of the evidence. So, the possibility of drawing two inconsistent conclusions from

the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  See Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II.  The Parties' Respective Burdens.

An individual seeking DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act places the initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his former type of work.  See Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996); Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985).  If the claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform, in light of his age,

education, and prior work experience.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512 and 404.1560.

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the claimant's testimony or that of other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since his alleged onset of disability: January 29, 2018. Admin. Rec. at 17-18. Next, he concluded that claimant suffers from the following severe impairments: "cardiac condition, status post aortic valve replacement and coronary artery bypass grafting (CABG)(x2); obstructive sleep apnea (OSA); and obesity." Id. at 18. But, the ALJ determined that claimant's impairments, whether considered alone or in combination, did not meet or medically equal any of the impairments listed in Part 404, Subpart P, Appendix 1. Admin. Rec. at 18-19. Claimant does not contest any of those findings – at least not clearly and directly. See generally Alston v. Apfel, 187 F.3d 621, 621 (1st Cir. 1999) ("It is not enough to merely mention a possible argument; a litigant has an obligation to spell out the argument squarely

6

and distinctly."). See also Claimant's "Pre-Hearing Memo" dated September 16, 2019, Admin. Rec. at 769 (conceding that "no treating source has rendered the opinion he [claimant] meets or equals a Listing level impairment or impairments.").

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of light work, subject to the following limitations:

> The claimant can lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently.  He can sit for up to 6 hours total per 8-hour workday and stand and/or walk for up to 6 hours total, combined, per 8-hour workday.  He can perform postural activities no more than occasionally, and requires a 5-minute break every hour, for use of bathroom facilities.

Admin. Rec. at 19.  In light of those restrictions, the ALJ concluded that claimant was not capable of performing any past relevant work as a gas-service technician or a tank-truck driver.  Id. at 26.  See also Id. at 43-44 (vocational expert's testimony about claimant's work history).

At the final step of the analysis, the ALJ considered whether there were any jobs in the national economy that claimant might perform.  Relying upon the testimony of the vocational expert, the ALJ concluded that, notwithstanding

7

claimant's exertional and non-exertional limitations, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. at 26. Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.

## Discussion

In March of 2018, approximately three months after his alleged onset of disability, claimant underwent cardiac surgery - coronary artery bypass grafting (or "CABG") and valve replacement - to address diastolic heart failure.  Following surgery, claimant experienced significant fatigue (likely due, at least in part, to subsequently-diagnosed obstructive sleep apnea), nocturia (frequent nighttime urination), and swelling/fluid retention in his lower legs.

Claimant asserts that the ALJ improperly evaluated the medical opinion evidence in determining his residual functional capacity.  In making that argument, claimant summarizes the various statements or findings by the ALJ, but he fails to clearly identify those he believes, whether alone or in combination, form the basis for remand.  See generally Claimant's Memorandum (document no. 10-1) at 4-12.  As for specific assertions that a factual conclusion reached by the ALJ

8

is not supported by substantial evidence, claimant makes two related arguments.  First, he says:

> [T]he ALJ's evaluation of the opinion evidence of record concerning Mr. Bourdeau's need to elevate his legs for up to 20% of an 8-hour workday, as indicated in treating physician Dr. Murakami's September 2019 opinion, is not supported by substantial evidence and fails to adequately address the factors of supportability and consistency as required by the regulations applicable to this case.

Claimant's Memorandum (document no. 10-1) at 12.  Next, he claims that:

> The possibility that Mr. Bourdeau might look for some work, possibly including part-time work, in the absence of any income to avoid losing his home, does not constitute substantial evidence to support the ALJ's finding that Mr. Bourdeau would not need to elevate his legs for 20% of the workday if he were trying to sustain full-time work.

Id. at 14.


The thrust of claimant's argument would, then, seem to be that the ALJ failed to accurately account for the claimed requirement that he be afforded the opportunity to elevate his legs for a significant portion of the workday.  That limitation is critical because the vocational expert testified that if claimant were required to elevate his legs for up to 20% of the

9

workday, he would be precluded from performing any gainful activity.  Admin. Rec. at 81.

There are two medical source opinions for that limitation. First, in December of 2018, Sally Jenkins, APRN, noted that claimant was experiencing edema in his legs and recommended that he "elevate them in the evening when he is watching TV."  Admin. Rec. at 744.  Subsequently, in September of 2019, Noboru Murakami, M.D., completed a "Physical Impairment Medical Source Statement" (Admin. Rec. at 764-68), in which he opined that if claimant were employed in a sedentary job, he would need to elevate his legs for 15 minutes at a time during twenty percent (20%) of the workday.  Id. at 766.

The problem with those two opinions – even if the ALJ had fully credited them – is that neither undermines the ALJ's conclusion that claimant is capable of performing a range of light work.  Nurse Jenkins recommended that claimant elevate his legs at night, while relaxing at home.  Indeed, claimant testified that he heeded that advice and even elevates his legs while sleeping.  Admin Rec. at 55.  As a consequence, he has obtained some relief.

Similarly, the ALJ's conclusions are not undermined by Dr. Murakami's opinion that, if restricted to sedentary work (that is, work largely performed in a seated position), claimant would have to elevate his legs for a significant portion of the workday. The ALJ concluded that claimant could perform a range of light work – jobs that would not necessarily require claimant to spend a substantial amount of time seated. See 20 C.F.R. § 404.1567(a) and (b).

On the other hand, there is substantial evidence in the record supporting the ALJ's RFC determination. That evidence includes claimant's ability to live largely alone, perform household chores, and care for himself, Admin. Rec. at 59-61, as well as the fact that claimant is not receiving (and has not sought) any treatment for the swelling in his legs, id. at 70. See also Id. at 236-39 (claimant's reported daily activities). Additionally, following claimant's surgery, his surgeon, Mauricio Villavicencio, M.D., and a cardiac nurse practitioner, Alysia Monaco, agreed that although claimant could not return to his former job, he could work in a position that involved "less manual and more administrative or light duty" tasks. Id. at 432. See also Id. at 548 (opinion letter of Dr. Villavicencio dated June 8, 2018, stating the same). In May of 2018, Matthew Gutierrez, M.D., examined claimant at Concord Cardiac Associates

11

and noted that claimant's heart rate was normal and rhythm was regular, his chest was clear, his diastolic chronic heart failure had been resolved by surgery, and his ventricular function was normal. Id. at 539-41. Dr. Gutierrez concurred with Dr. Villavicencio's assessment of claimant's ability to perform work-related abilities. Id. at 539.

In July of 2018, Jonathan Jaffe, M.D., reviewed claimant's medical records and completed a "Physical Residual Functional Capacity Assessment." In it, he concluded that claimant was capable of performing the exertional requirements of light work. Admin. Rec. at 100-01. Although Dr. Jaffe's opinions predated some of the medical records presented to the ALJ, his opinions are consistent with claimant's later medical records. As this court (Barbadoro, J.) has observed:

> It can be reversible error for an ALJ to rely on an opinion of a non-examining consultant who has not reviewed the full medical record. But the fact that an opinion was rendered without the benefit of the entire medical record does not, in and of itself, preclude an ALJ from giving significant weight to that opinion. The ALJ may rely on such an opinion where the medical evidence postdating the reviewer's assessment does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not clearly inconsistent with, the reviewer's assessment.

12

Byron v. Saul, No. 18-CV-684-PB, 2019 WL 3817401, at *6 (D.N.H. Aug. 14, 2019) (citations and internal punctuation omitted).

In summary, then, the record reveals that claimant has responded well to surgical intervention. His cardiac condition is largely resolved and his cardiac function appears to be essentially normal. See, e.g., Admin. Rec. at 539-41, 550, 562-63, 570-71, 742-44, 758. The ALJ adequately explained why he discounted the two opinions concerning claimant's need to elevate his legs. But, even fully crediting those opinions, they do not undermine the ALJ's RFC determination or his ultimate conclusion that claimant was not disabled at any time prior to the ALJ's decision.

## Conclusion

Judicial review of the ALJ's decision is both limited and deferential. This court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether he is disabled under the Act. Consequently, the issue before the court is not whether it believes claimant is disabled. Rather, the permissible inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

Provided the ALJ's findings are properly supported by substantial evidence - as they are in this case - the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. Such is the nature of judicial review of disability benefit determinations. See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and the claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled, as that term is used in the Act, at any time prior to the date of the ALJ's decision (October 2, 2019). The ALJ's determination of claimant's RFC, as well as his stated reasons for crediting some medical opinions while discounting others, are well-reasoned and supported by substantial evidence.

For the foregoing reasons, as well as those set forth in the Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 10) is denied, and the Commissioner's motion to affirm his decision (document no. 12) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 4, 2021

cc: D. Lance Tillinghast, Esq.
    Lisa G. Smoller, Esq.
    Luis A. Pere, Esq.